IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOZE M. ROCHA                                                                                               PLAINTIFF

v.                                      CASE NO.         12-2172

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                                   DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on February 16, 2010, alleging an onset date of October 1, 2008, due to plaintiff's hip pain, back pain, knee pain, shoulder pain, hand inflamation, and depression. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on May 3, 2011. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 41 years of age and possessed a 12 grade education. The Plaintiff had past relevant work ("PRW") experience as a bilingual receptionist, clerk, general production worker, meat checker, pc cutter, and trimmer (T. 165).

On May 17, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's arthritis, obesity, depression, bipolar disorder, generalized anxiety disorder, panic disorder with agoraphobia, and intermittent explosive disorder did not meet or equal any Appendix 1 listing. T. 11. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to light work with additional restrictions. T. 13. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as parking lot attendant, bench assembler, and school bus monitor. T. 18.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. Record Development**

The Plaintiff first contends that the ALJ failed to develop the record (ECF No. 11, p. 9) by not obtaining the medical records from Dr. Martinez at Tropical Texas Center and Dr. Summia Malhi of Brownsville Community Health. (Id., p. 10).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d

935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

      It appears that the Defendant sent a request for the Plaintiff's records to the Brownsville Community Health Clinic on August 16, 2010. (T. 271). The Commissioner did not request just one record but all records of the Plaintiff. The Clinic responded with a Progress Note (T. 273) and an x-ray of the left hip from her visit of April 1, 2010. (T. 272). It is well established that the burden of proof to demonstrate the existence of a disability lies with the claimant seeking benefits. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991) (burden on plaintiff to prove disability; thus, plaintiff has responsibility for presenting strongest case possible). If the Brownsville Health Clinic's response was incomplete it was the Plaintiff's responsibility to supplement the record.

      Shortly after filing for benefits the Commissioner ordered a Mental Evaluation which was performed by Dr. G. Alan Trimble, M.D. in April 2010. (T. 277). Dr. Trimble diagnosed the Plaintiff with Bipolar I Disorder, Panic Disorder with Agoraphobia, Generalized Anxiety Disorder (T. 281), Intermittent Explosive Disorder, and Substance Abuse (T. 282). He felt she

had a GAF of 50.[2] (T. 283). The Plaintiff acknowledged to Dr. Trimble that she "had never received any treatment" (T. 277) so there were no other mental records for the ALJ to obtain. Dr. Susan Thompson, M.D. preformed a Psychiatric Review Technique in June 2010 (T. 296) and provided a Mental RFC (T. 292) finding the Plaintiff was only Moderately Limited in some areas (T. 292-293).

The Commissioner also obtained a physical examination performed by Dr. Ricardo A. Adames, M.D. on May 10, 2010. Dr. Kelvin Samaratunga, M.D. then provided a Physical RFC assessment finding that the Plaintiff could lift 50 pounds occasionally, 25 pounds frequently and sit, stand and/or walk for about 6 hours in an 8-hour work day. (T. 311). He found no postural limitations (T. 312) or manipulative limitations (T. 313).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this case the court believes that the ALJ properly developed the record.

**B. RFC Assessment**

The ALJ determined that the Plaintiff had the Residual Functional Capacity to:
perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant must work in a job where she is allowed to sit or stand alternatively at will, but she would not have to leave the workstation. In addition, she can occasionally climb ramps or stairs, but she can

---

[2] A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000). A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

never climb ladders/ropes/scaffolds. Also, the claimant's work is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions with few, if any, work place changes and she must have only occasional interaction with supervisors.

    1.  Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

    a.  Work Record

The Plaintiff's work record over the past fifteen years is mixed having gained SGA in only 1995, 1999, 2001, 2002, 2004, 2005, 2006, 2007, 2008. (T. 133). Even that SGA, however, was very moderate averaging in the low teens except for 2006 when the Plaintiff earned $21,928.18. (Id.). It appears that the Plaintiff had four jobs in 2008 and she testified that she was

terminated from her job in October because "I deal with a certain amount of pain every day, and there are day that it's more and it makes me a not so friendly person, and my coworkers felt that they could not–they did not feel comfortable working with me because of the way I was." (T. 29). An ALJ may consider a claimant's work record in his credibility analysis. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ may consider that a claimants sporadic work record reflecting relatively low earnings and multiple years with no reported earnings that showed a lack of motivation to return to work)

      b.  Duration, Frequency and Intensity of Pain

There does not appear to be any medical records produced showing that the Plaintiff sought any treatment for any of the alleged impairments prior to the alleged onset date of October 1, 2008.

On July 9, 2009 the Plaintiff visited the Baxter Regional Medical Center complaining of left leg pain. (T. 236).  The diagnosis was Knee pain-swelling; knee sprain.  (T. 238).  There was no loss of motor function (T. 239) and the Venous Doppler ultrasound of the left lower extremity was normal. (T. 250).  She was prescribed hydrocodone and Flexeril and Advil (Tr. 240) and given Educational Material about Sprains. (T. 245). On July 24, 2009 the Plaintiff was seen again at the Baxter Regional Medical Center for treatment of a Boil on her left hip. (T. 254). No medication was prescribed and only Educational Material was given to the Plaintiff. (T. 257). This constituted the entire medical record of the Plaintiff prior to filing her claim for disability on February 16, 2010.

It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id*.; *See*

*Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

It is also true that Plaintiff's attempts to excuse her failure to pursue more aggressive treatment cannot be wholly excused due to her claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999)

      c. Medication

In her Disability Report completed at the time of her application for benefits in February 2010 the Plaintiff stated that she was not taking any Medicines. (T. 167). On May 3, 2011, when the Plaintiff testified before the ALJ she stated that she was not on any medication and contended that she could not obtain medication because of her financial condition. (T. 31). The record shows that the Plaintiff smokes ½ pack of cigarettes per day and has for many years. (T. 289). *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (noting that despite the claimant's claim that he could not afford medication, the fact that he chose to smoke rather than pay for medications was inconsistent with disabling pain). The Plaintiff also testified at the hearing that she "used to smoke marijuana" and when asked by the ALJ when she last consumed marijuana she admitted that she last used marijuana just three months prior to the hearing. (T. 29).

A claimant's allegations of disabling pain may be discredited under the third Polaski factor by evidence that the claimant has received minimum medical treatment and/or has taken medications for pain only on an occasional basis. *See Cline v. Sullivan* 939 F.2d 560, 568 (C.A.8 (Iowa),1991); *citing Williams v. Bowen*, 790 F.2d 713 (8th Cir.1986).

Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). The court believes that the ALJ properly discounted the Plaintiff assertions of disabling pain.

2. RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing *Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The Plaintiff was seen by Dr. Trimble, M.D. for a mental evaluation in April 2010 and he diagnosed the Plaintiff with Bipolar I Disorder, Panic Disorder with Agoraphobia, Generalized Anxiety Disorder, Intermittent Explosive Disorder, and Substance Abuse. (T. 281-282). Dr. Susan Thompson, M.D. provided a Psyciatric Review Technique on June 21, 2010 (T. 296) and found the Plaintiff to have Mild Restrictions of Daily Living, Moderate Restrictions of Social Functioning and Maintaining Concentration, Persistence, or Pace, and No Episodes of Decompensation. (T. 306). Dr. Thompson provided a Mental RFC assessment finding that the Plaintiff was only Moderately Limited in some areas (T. 292-293) and felt that the Plaintiff could " UNDERSTAND, REMEMBER AND CARRY OUT DETAILED BUT NOT COMPLEX INSTRUCTIONS, MAKE DECISIONS, ATTEND AND CONCENTRATE FOR EXTENDED PERIODS, ACCEPT INSTRUCTIONS AND RESPOND APPROPRIATELY TO CHANGES IN ROUTINE WORK SETTINGS." T. 294. Dr. Thompson's findings were reviewed and affirmed by Dr. Thomas Geary on September 17, 2010. (T. 319)

The Plaintiff was seen by Dr. Ricardo Adames on May 10, 2010 for a physical examination (T. 289) and he noted that all joints had a full range of motion, that the dorsiflexion

of the lumbar spine was intact, pulses were present with good intensity in the lower and upper extremities (T. 290). A Physical RFC was performed by Dr. Kelvin Samaratunga, M.D. on June 21, 2010 finding that the Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and stand and/or walk and sit for 6 hours in an 8-hour workday. (T. 311). Dr. Samaratunga's findings were reviewed and affirmed by Dr. James Wright, M.D. on September 23, 2010. (T. 320).

As the court has noted previously there were no contrary treating physician assessments. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

Notwithstanding the above opinions the ALJ limited the Plaintiff to Light Work with additional restriction taking into account her hip deformity (T. 272) and her mental condition. It is the ALJ's job to reach a decision as to the claimant's legal disability by evaluating the objective medical evidence before him. *Cox v. Barnhart* 345 F.3d 606, 608 (C.A.8 (Ark.),2003). The court believes that the ALJ properly evaluated the evidence before him and determined a proper RFC for the Plaintiff.

**C. Vocational Expert Opinion:**

The ALJ moved to step 5 and received testimony from a vocational expert concerning the number of jobs that could be performed by an individual with the RFC assessment found by the ALJ to apply to the Plaintiff. (T. 41-45).

Testimony from a vocational expert ("VE") based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); cf. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." Id. (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993)); see also *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir.1994).

The court finds that the hypothetical question posed by the ALJ to the VE was proper.

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this July 18, 2013.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE